UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

C's DISCOUNT PHARMACY, INC. AND                    CIVIL ACTION
CIOLINO PHARMACY, INC.,

VERSUS                                              NO. 13-2989

LOUISIANA CVS PHARMACY, L.L.C.                     SECTION "C"(3)


## ORDER AND REASONS

Before the Court are three motions: (1) C's Discount Pharmacy, Inc. d/b/a C's Discount Pharmacy, and Ciolino Pharmacy, Inc. d/b/a C's Discount Pharmacy's (collectively, "C's") motion for summary judgment; Rec. Doc. 9; (2) Louisiana CVS Pharmacy, LLC's (CVS') cross-motion for summary judgment; Rec. Doc. 16; and (3) C's motion for summary judgment as to CVS' counterclaim; Rec. Doc. 28.  All of the motions are opposed.  Having considered the memoranda of counsel, the record, and the applicable law, for the following reasons, the Court grants C's motion for summary judgment; Rec. Doc. 9; grants CVS' cross-motion for summary judgment; Rec. Doc. 16; and denies C's motion for summary judgment as to CVS' counterclaim; Rec. Doc. 28.

## I. BACKGROUND

C's filed this case in the 24th Judicial District Court for the Parish of Jefferson. Rec. Doc. 1-2.  C's brought the case against CVS as a result of a Purchase and Sale Agreement that was executed between the parties on February 24, 2012. *Id.* at 4.  Under the agreement, plaintiff agreed to sell two pharmacies, and non-pharmacy inventory, fixed assets, lease hold improvements and prescription files and other goodwill from its business to CVS. *Id.*  CVS was

1

to pay plaintiff a set amount of money on the Date of Inventory, which was March 30, 2012. *Id.* The agreement also provided that CVS would "holdback" an amount of $1,000,000 "as a reserve to ensure payment of Seller's [Plaintiff's] indemnification obligations pursuant to the Agreement." *Id.* The main requirement at issue here was a non-compete agreement that specified that the owners of C's were not to compete with the stores, which would now be owned by CVS. The holdback was supposed to be paid on March 30, 2013, one year from the Date of Inventory. *Id.* Syed Hussain, Director of Real Estate & Corporate Acquisition for CVS, sent Steven Ciolinio, President of C's, a letter on February 5, 2013 informing him that CVS was not going to pay the holdback amount because C's violated the agreement not to compete contained in Section 19 and Schedule C of the Purchase and Sale Agreement. *Id.*

Defendants allegedly refused C's requests to produce any evidence that the five owners of C's had violated the non-competition agreement. *Id.* at 5. C's claims that it sent four separate affidavits to CVS to prove that neither C's nor its five individual owners had any business or financial interests in either of the two pharmacies that it suspected many of the former C's customers had begun to patronize after the Purchase and Sale agreement. *Id.* Plaintiff denies that it violated the non-competition agreement and claims that CVS has an obligation to pay the holdback amount. However, in its petition, plaintiff only specifically requested that the Court issue a declaratory judgment that the non-competition agreement contained in Section 19 and Schedule C to the Purchase and Sale Agreement is not valid. *Id.* C's requests that the Court find that the non-competition agreement only ("the agreement") is not valid because it does not comply with the requirements in Louisiana Revised Statute 23:921. *Id.* It asks the Court to find that the agreement does not comply with the statute because the agreement (1) specifies a period

of five years, which is above the statutory maximum of two years, for the non-competition agreement, and (2) does not specify the parish or municipality in which the non-competition agreement is to be enforced. *Id.* at 5-6.  Instead, the agreement states that the "territory" for the non competition agreement is "(a) anywhere within a radius of ten (10) miles of the Premises . . . ." *Id.*  Plaintiff claims that the severability clause in Section 16 of the agreement would allow the Court to sever the offending language and enforce the remaining portions of the contract. *Id.* at 6-7.  C's cautioned the Court against "re-writing" the contract and concluded by arguing that when the Court removed the five-year term of the non-competition agreement and the vague territorial requirement, the only effect of the Court's actions on the agreement would be to remove the non-competition requirement. *Id.* at 7. In addition to invalidating the non-competition agreement, C's asked the Court to order CVS to pay the holdback amount and any other money due from the Purchase and Sale Agreement, and any other damages allowable under law. *Id.* at 8.

  CVS removed the case to this Court on May 13, 2013. Rec. Doc. 1.  It filed a counterclaim on June 10, 2013, which alleges that C's and its shareholders and Jane Ciolino have violated the terms of the non-compete agreement by directing customers to other locally-owned pharmacies and retailers in direct competition with CVS. Rec. Doc. 14 at 9.  CVS also alleges that if C's complaint is taken as true and the non-compete agreement is unenforceable under La. R.S. 23:921, C's has made an admission that its failure of cause as to the parties entering the non-compete agreement. *Id.* CVS argues that they it would be entitled to recover the $1,000,000 it paid C's as consideration for entering the non-compete agreement. *Id.* at 10.

## II.  LAW AND ANALYSIS

**A. Standard of Review for Summary Judgment**

Summary judgment is proper only when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.56; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "If a moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 2994); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 871-73 (1990). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50.

**B. C's Motion for Summary Judgment**

In C's motion for summary judgment, it asks for summary judgment on exactly what it alleged in the complaint: (1) that the non-competition agreement does not comply with La. R.S. 23:921(B) because the term of the agreement is for five years and the law only allows for a maximum of a two year agreement and (2) that the restricted territory for the agreement does not comply with the law because it does not list any specific parishes or municipalities by name. Rec. Doc. 9 at 1. C's argues that the severability clause in the agreement does not allow the Court to add language to the contract and that therefore the non-competition agreement should be invalidated. *Id.* at 12. CVS' opposition discusses its own counterclaim rather than explaining why it opposes C's motion for summary judgment. Rec. Doc. 19.

> Louisiana Revised Statute 23:921 states in part (B) that:
>
> Any person . . . who sells the goodwill of a business may agree with the buyer that the seller . . . will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business being sold within a specified parish or parishes, or municipality or municipalities, or parts thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein, not to exceed a period of two years from the date of sale.

C's argues that the provisions of this statute should be strictly enforced because a non-competition agreement is in derogation of common right and goes against public policy. Rec. Doc. 9 at 6-7. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So.2d 294, 298 (La. 2001) (explaining that Louisiana has a longstanding public policy disfavoring noncompetition agreements and that the agreements are in derogation of a common right and therefore must be strictly construed against the party seeking their enforcement); *see also Medivision, Inc. et al v. Bruce A. Germer M.D.* 92-1755 (La. App 4th Cir. 3/30/1993) 617 So. 2d 69, 72 (requiring strict

compliance with the requirements of the statute and finding that when there was not strict compliance a non-competition clause which failed to meet the requirements of La. R.S. 23:921 because it did not specify the "limits of the prohibition" was invalid) .

Firstly, C's alleges that the non-competition agreement does not meet the requirements of the statute because it requires non-competition for five rather than two years. Rec. Doc. 9 at 8; *see also* Exh. 1 at 14 & 18.  C's points to *Boswell* to argue that a non-competition agreement for more than the statutory maximum period is invalid. *Boswell v. Sokham IEM*, 37,713 (La. App. 2 Cir. 10/31/03), 859 So.2d 944. However, the Court looks to *SWAT* for guidance as to whether, in an instance such as this where the contract has a severability clause, a non-competition agreement is void, or whether only the offending language must be excised. *SWAT*, 808 So.2d at 309.  In *SWAT*, the Louisiana Supreme Court explained that it had considered a similar case, *AMCOM*, where the Court addressed whether a severability clause made it possible to excise the offending language from the noncompetition clause without doing damage to the remainder of the provision. *Id*.  The Court SWAT found that it should follow *AMCOM* to sever the null clause from the agreement without declaring the rest of the non-competition agreement null in its entirety because there had previously been a state of uncertainty in the law over this issue based on a split in the circuits. *Id.*  This Court does the same thing and will excise the offending language requiring the non-competition agreement to last for five years.  Therefore, the agreement may only last for the statutory maximum of two-years.

C's also claims that the non-competition agreement is invalid because the agreement only specifies the territory covered by the agreement as "anywhere within a radius of ten (10) miles of the Premises (the "Territory")." Exh. 1 at 18.  The Court finds that this language is overly broad

and in derogation of the statute. In *AMCOM of Louisiana, Inc. v. Battson*, 670 So.2d 1223 (La. 1996), the Louisiana Supreme Court reversed the Second Circuit and reinstated the judgment of the trial Court which had found an agreement geographically overbroad in violation of La. R.S. 23:921. *See also AMCOM of Louisiana, Inc. v. Battson*, 28,171 (La.App. 2 Cir. 1/5/95), 666 So.2d 1227, 1228 (explaining the trial court's ruling).  While this Court may not insert language into the agreement, it is able to delete the offending language. *AMCOM*, 670 So.2d 1223; *See also SWAT*, 808 So.2d at 298 (finding that the Court may delete but not insert additional language and explaining that the *AMCOM* Court appropriately found that a non-competition agreement was void when it determined that without the deleted portions of the agreement that were in conflict with the statute, the agreement was left with no language to prohibit the complained of conduct).  The Court deletes the overbroad portion of the noncompetition agreement, which limits the territory of the agreement to anywhere within a ten mile radius of the premises, but it then finds that there is no language in the agreement that restricts the non-competition agreement to a "specified parish or parishes, or municipality or municipalities" as required by the statute, and therefore, under the principle of strict construction, the non-competition agreement is invalid.  Therefore, the Court grants plaintiff's motion for summary judgment finding that the non-competition agreement is invalid.

      The Court does not, at this time, reach the issue of attorney's fees.  Furthermore, the Court notes that plaintiff has not plead facts either in this motion or in the complaint to allow it to find that breach of the non-competition agreement means that CVS is currently in default.  As noted by C's, the non-competition agreement is severable from the rest of the agreement. Rec. Doc. 9 at 9; *see also* Exh. 1, Section 16.

7

**C. CVS' Cross-Motion for Summary Judgment**

CVS moves for summary judgment based on its counterclaim that if the non-competition agreement is void, it is entitled to recover the $1,000,000.00 that it paid C's in consideration for entering the non-compete agreement. Rec. Doc. 16 at 1.  CVS argues that C's retention of the money would constitute unjust enrichment under Louisiana Civil Code 2298. *Id.*  Alternatively, CVS also argues that if the non-competition agreement is void, it is entitled to the difference between the lesser of the non-compete and the holdback amount of $100,000.00. *Id.* at 2.  Since the Court has found that the non-competition agreement is void, CVS may not retain the holdback amount in order to insure payment of an obligation that no longer exists. While CVS may not refuse to pay this amount, it is entitled to recover the money it paid to C's in consideration for the non-competition agreement. Section C of the agreement clearly states that: "In consideration of the covenant set forth herein, Buyer agrees to pay the total sum of $1,00,000.000 . . . . " Rec. Doc. 16, Exh. 1 at 20.  This sum was accordingly no longer given in return for anything since the agreement is invalid.  Therefore, CVS' cross-motion for summary judgment is granted. Rec. Doc. 16.

**D. C's Motion for Summary Judgment as to CVS' Counterclaim**

C's brings a motion for summary judgment arguing that none of its shareholders has violated the non-competition agreement and that it has relied on its agreement with CVS not to compete for seventeen-months and that therefore CVS is equitably estopped from "changing its position to its detriment." Rec. Doc. 28 at 1 & 10.  C's claims that therefore CVS should not be reimbursed for the $1,100,000 that it paid for the non-competition agreement. *Id.* at 11.  Equitabble estoppel is not favored in Louisiana Law. *State v. Mitchell*, 337 So.2d 1186, 1188

(La. 1976); *Doss v. Cuevas*, 2007-1803 (La. App. 1 Cir. 3/26/08), 985 So.2d 740, 743.  C's asked the Court to find that the non-competition agreement was invalid and now that the Court has found in its favor, it is making a last ditch effort to "have its cake and eat it too."  The Court declines to apply the doctrine of unjust enrichment and denies plaintiff's motion for summary judgment. Rec. Doc. 28.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that plaintiff's motion for summary judgment is GRANTED. Rec. Doc. 9.

IT IS FURTHER ORDERED that defendant's cross-motion for summary judgment is GRANTED. Rec. Doc. 16.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment as to CVS's Counterclaim is DENIED. Rec. Doc. 28.

New Orleans, Louisiana, this 30th day of September, 2013.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**