UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| C's DISCOUNT PHARMACY, INC. AND CIOLINO PHARMACY, INC., | CIVIL ACTION |
| VERSUS | NO. 13-2989 |
| LOUISIANA CVS PHARMACY, L.L.C. | SECTION "C"(3) |

## ORDER AND REASONS

Before the Court is the Motion to Alter or Amend Judgment Pursuant to Rule 59(e) of C's Discount Pharmacy, Inc. and Ciolino Pharmacy, Inc. (collectively "C's"). Rec. Doc. 39. Defendant Louisiana CVS Pharmacy, LLC ("CVS") opposes. Rec. Doc. 49. The Court, having considered the record, the law, and the memoranda of counsel, hereby GRANTS IN PART and DENIES IN PART plaintiffs' motion.

## I. Factual Background and Procedural History

The above-captioned matter concerns CVS's purchase of premises owned by C's and the execution of an associated non-compete agreement between the two parties. Rec. Doc. 27. Consideration for the purchase included a $1,000,000 "Holdback Amount," which CVS would retain for one year as insurance against losses covered under the Agreement's indemnification provisions. *Id.*, § 6(d) at 6. Consideration for the Non-Compete Agreement included a $1,100,000 amount that CVS paid to C's stock holders, the "Non-Compete Amount." *Id.*, sched. C at 2.

In April 2013, C's filed the instant action, raising three prayers for relief: (1) a declaration of that the Non-Compete Agreement was void under statute; (2) thereafter, recovery

1

of the Holdback Amount allegedly due under the Purchase and Sale Agreement; and (3) payment of attorney's fees and costs based on CVS's nonpayment of the Holdback Amount. Rec. Doc. 1-2 at 8.

CVS removed this action May 13, 2013. Rec. Doc. 1. Shortly thereafter, C's filed for summary judgment, focusing on the non-compete agreement's validity but requesting all relief sought in its complaint. Rec. Doc. 9-1 at 4, 16.

On June 10, 2013, CVS answered the complaint, pleading as affirmative defenses its entitlement to recover the Non-Compete Amount and to retain the Holdback Amount in satisfaction of the price paid for the Non-Compete Amount. Rec. Doc. 14, ¶¶ 19-27. It also filed a three-count counterclaim. Count I claimed that C's had breached the Non-Compete Agreement and damaged CVS's business and reputation. *Id.*, ¶¶ 39-40. Count II claimed, alternatively, that the Non-Compete Agreement's voidness entitled CVS to a refund of the Non-Compete amount. *Id.*, ¶¶ 41-44. Count III claimed unspecified breaches of the Purchase and Sale Agreement by CVS. *Id.*, ¶ 45.

After filing its Answer, Affirmative Defenses, and Counterclaim, CVS immediately cross-moved for summary judgment, seeking return of the Non-Compete Amount and recognition of its entitlement to retain the Holdback Amount in satisfaction the Non-Compete Amount. Rec. Doc. 16-1 at 6-10. These arguments correspond to CVS's affirmative defense and Count II of its counterclaim. On July 11, 2013, C's moved for summary judgment on CVS's counterclaim regarding the Non-Compete Amount. Rec. Doc. 28.

On September 30, 2013, the Court issued an Order and Reasons, granting C's motion for summary judgment, granting CVS's cross-motion for summary judgment, and denying C's

motion for summary judgment as to CVS's counterclaim. Rec. Doc. 38 at 9. The Court found that the Non-Compete Agreement between the parties was null and void under La. Rev. Stat. 23:921 because of its geographic over-breadth. *Id.* at 6-7. The Court did not award the Holdback Amount to either party. However, it rejected CVS's argument that it was entitled to retain the Holdback Amount to satisfy the alleged obligation to repay the Non-Compete Amount. *Id.* at 8. The Court also expressly declined to resolve C's request for attorney's fees. *Id.* at 7.

Thus, the Court's September 30 Order and Reasons, although purporting to grant the cross-motions for summary judgment in full, left certain claims or issues in the case unresolved, to wit:

1. C's demand for attorney's fees and costs based on CVS's breach of the Purchase and Sale Agreement.

2. C's demand for the Holdback Amount.

3. CVS's claim for breach of the Purchase and Sale Agreement.

C's now argues that the Court's Order and Reasons was plagued by manifest errors of fact or law and that injustice would result from the failure to correct those errors. Specifically, C's urges that the Court's failure to award C's the Holdback Amount was the result of its failure to acknowledge that C's requested the same in its original complaint and motion for summary judgment. Rec. Doc. 39-1 at 4-7. C's argues that it is entitled to Holdback Amount because the Court has rejected CVS's only argument for retaining it, i.e., the right to indemnification for the Non-Compete Amount. *Id.* at 8-10.

C's further argues that the Court wrongly awarded CVS the Non-Compete Amount because C's had performed according to the Non-Compete agreement at its own expense,

3

notwithstanding the Agreement's invalidity; because CVS's own negligence prevented C's from fully satisfying its non-competition obligations; and because Court wrongly determined that there was not cause for CVS's entry into the Non-Compete Agreement. *Id.* at 10-20. C's asks the Court to correct a statement in the Order and Reasons that C's contended in its motion for summary judgment that CVS breached the non-compete agreement. *Id.* at 20-21. C's finally requests the Court to clarify whether its September 30 Order and Reasons was a final order for purposes of appeal. *Id.* at 21.

CVS argues in opposition that C's motion merely rehashes previously unsuccessful and unmeritorious arguments. Rec. Doc. 49.

**II. Standard of Review**

A. Reconsideration

Although both parties have briefed this motion under Rule 59(e), that provision of the Federal Rules of Civil Procedure only applies to final judgments. *Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009) (citing *James by James v. Sadler*, 909 F.2d 834, 836 (5th Cir. 1990)). As C's contends that the Court's September 30 Order and Reasons is ambiguous with respect to its scope and finality, it is perhaps understandable that C's would invoke Rule 59(e), out of an abundance of caution if for no other reason. Nevertheless, and notwithstanding any other ambiguity, the Court's September 30 Order and Reasons expressly left the issue of attorney's fees unresolved. Rec. Doc. 38 at 7. The Court did not direct the entry of final judgment as to those claims that it expressly resolved; nor did it expressly determine that there was no just reason for delay in the entry of judgment as to those claims, as required for the entry of partial final judgment under Rule 54(b). Therefore, the September 30

4

Order and Reasons, which adjudicated "fewer than all the claims" in this case, can only be construed as interlocutory, and therefore subject to revision "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

The precise standard for reconsideration under Rule 54(b) is unclear but generally regarded as less exacting than that which applies to Rules 59 or 60. *Dos Santos*, 651 F. Supp. 2d at 553. The same grounds can be used to argue for reconsideration under either standard: manifest error of fact or law, newly discovered evidence, manifest injustice, and change in controlling law. *Flynn v. Terrebonne Parish Sch. Bd.*, 348 F. Supp. 2d 769, 771 (E.D. La. 2004). Similarly, considerations relevant to analysis under Rules 59 and 60, such as whether a movant is attempting to rehash a previous argument or raise a new one that should have been presented in the original motion, bear on whether reconsideration of a previous interlocutory order is warranted. *Dos Santos*, 651 F. Supp. 2d at 553. Nevertheless, the trial court's discretion to reverse, reconsider, or revise an interlocutory order is very broad by comparison to Rules 59 and 60. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990) ("the trial court is free to reconsider and reverse its [interlocutory] decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n. 14 (5th Cir.1994) (en banc); *see also James*, 909 F.2d at 836 (" The policy interests underlying Rules 59 and 60, securing the finality of judgments, were not implicated in this case because the action was still proceeding against other defendants in the district court.").

B. Summary Judgment

5

Summary judgment is proper only when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.56; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

Where the non-moving party bears the burden of persuasion at trial, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence-using any of the materials specified in Rule 56(c)-that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331.

Once the moving party meets its burden, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 2994); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 871-73 (1990). The mere argued existence of a factual dispute will not defeat an

otherwise properly supported motion. *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50.

**III. Analysis**

As an initial matter, the Court hereby adopts and affirms its conclusion from the previous Order and Reasons that the Non-Compete Agreement is void and unenforceable for purposes of Louisiana law. *See* Rec. Doc. 38 at 5-7. Thus, C's is entitled to summary judgment as to the first prayer for relief or count in its complaint.

A. Reconsideration of C's Unresolved Claims

C's argues that this Court should have awarded C's the Holdback Amount based on its demand in the complaint and prayer for relief in the motion for summary judgment. Rec. Doc. 39-1 at 4-10. The Court apologizes for its incorrect statement on page 2 of the Order and Reasons that C's had not requested the Holdback Amount in its original petition. C's clearly requested the Holdback Amount, as the Court acknowledged on the very next page of its Order and Reasons. Rec. Doc. 38 at 3 ("In addition to invalidating the non-competition agreement, C's asked the Court to order CVS to pay the Holdback Amount and any other money due from the Purchase and Sale Agreement, and any other damages allowable under law."). This misstatement was unrelated to the Court's failure to rule on the C's entitlement to the Holdback Amount. Rather, the Court did not understand C's to have raised this issue in its motion for summary judgment.

As C's has acknowledged, it bears some responsibility for the Court's lack of awareness. Rec. Doc. 39 at 2. The only legal analysis incorporated into the motion concerns the validity of

7

the Non-Compete Agreement.[1] Rec. Doc. 9-1 at 6-15. Immediately afterward, C's argued that it was entitled to attorney's fees based on a breach of contract, without specifying the conduct that constituted the alleged breach. *Id.* at 15. The contours of C's argument to resolve the entire petition only emerged in summary fashion at the end of C's memorandum. *Id.* at 16. This concluding argument does not incorporate citations to record evidence or controlling authority. The Court is not responsible for supplying the detail needed to make counsel's motions cogent or persuasive.

Nevertheless, on reexamination of the pleadings, it is clear enough that C's asserted an entitlement to the Holdback Amount and attorney's fees based on having overcome CVS's lone justification for retaining the Holdback Amount. *See* Rec. Doc. 9 at 1; Rec. Doc. 9-1 at 16. Further, CVS responded to this argument in its opposition to summary judgment, Rec. Doc. 19 at 7-9, in addition to raising the issue separately in its cross-motion for summary judgment, Rec. Doc. 16-1 at 2. In opposition to the current motion to amend, CVS has not argued that it lacked notice of C's argument. Nor does it appear that CVS would be prejudiced in any way by attempting to resolve C's argument based on the record under standards applicable to motions for summary judgment. The Court will therefore analyze C's remaining claims.

*1. C's is entitled to receive the Holdback Amount.*

The Court previously rejected CVS's argument that nullification of the Non-Compete Agreement rendered the Non-Compete Amount compensable under the indemnity provisions of the Purchase and Sale Agreement. *See* Rec. Doc. 38 at 8. The Court hereby clarifies,

---

[1] The Court was particularly led astray by C's own statement: "**Regardless of the unsupported allegations by CVS, this motion for summary judgment focuses on the invalidity of the non-competition agreement, which on its face does not comply with the requirements of La. R.S. 23:921.**" Rec. Doc. 9-1 at 4 (emphasis in original).

notwithstanding the previous Order and Reasons, the rationale for this conclusion.

The indemnification provision of the Purchase and Sale Agreement requires C's, as seller to indemnify CVS, as buyer, under two sets of circumstances. The first is when liability, loss, cost, or damage arises out of or results from C's own breach of the Purchase and Sale Agreement. Rec. Doc. 27, § 18(a)(i) at 11. CVS has ceased arguing, nor does it appear, that this provision is applicable. The second is when liability, loss, cost, or damage arises out of or results from C's obligations or liabilities. *Id.* § 18(a)(ii) at 11.

> Section 18(a)(ii) states in pertinent part:
>
> Seller hereby indemnifies and agrees to defend and hold it harmless from and against any and all liability, loss, cost or damage [including attorney fees] arising out of or resulting from: . . .
>
> (ii) any and all liabilities and obligations of every nature and description of Seller, . . . , up to and including the Date of Inventory, or resulting from operations or based upon events, acts or omissions which occurred prior to or on such date.

Rec. Doc. 27, § 18(a)(ii) at 11.

This section cannot be used as a basis for indemnification for CVS's loss of the Non-Compete Amount because that loss did not "arise out of or result from" an obligation or liability of C's. Rather, as explained below, it was C's shareholders' alleged individual obligations to repay that arose out of or resulted from CVS's loss of the Non-Compete Amount. Thus, neither the relationship between obligation and loss nor the identity of obligor conform to the requirements of § 18(a)(ii).

CVS has argued that even if C's is entitled to receive the Holdback Amount, the Court should find that C's obligation to pay CVS the Non-Compete Amount offsets CVS's obligation. Rec. Doc. 19 at 8. However, as explained below, it is the Ciolino family, and not C's, who would

owe CVS for the voidness of the Non-Compete Agreement. Therefore, C's has no offsetting obligation to CVS for purposes of La.C.C. art. 1893.

CVS having put forward no other evidence or argument to resist summary judgment on this issue, the Court finds that C's is entitled to summary judgment on its claim for the Holdback Amount - C's second prayer for relief.

*2. CVS's retention of the Holdback Amount does not constitute breach of contract.*

C's argues that it is entitled to receive attorney's fees and costs incurred to recover the Holdback Amount. Rec. Doc. 9-1 at 15-16. In light of the express language of §6(d), of the Agreement, which provides for the Holdback Amount, the Court cannot conclude that CVS breached the Agreement by failing to pay the Holdback Amount before the Court reached a final determination of CVS's right to indemnity.

> Section 6(d) of the Agreement provides in its entirety:
>
> $1,000,000.00 (hereinafter the Holdback Amount) shall be retained by Buyer and not paid to Seller as a reserve to ensure payment of Seller's indemnification obligations pursuant to this Agreement. Buyer shall hold, administer, and disburse the Holdback Amount, net of amounts, if any, applied against Seller's indemnification obligations as provided herein, together with interest at the annual rate of one (1%) on all amounts held by Buyer (net of amounts, if any, applied against Seller's indemnification obligations hereunder) for Seller, pursuant to this Agreement, computed from the Date of Inventory. Following acknowledgment by Seller or a determination of liability on account of Seller's indemnification obligations hereunder, Buyer shall deduct from the Holdback Amount an amount equal to the damages suffered or incurred and either retain such amount for its own account or make payments directly to the appropriate party. At any time from and after one year from the Date of Inventory, Seller may submit a request to Buyer to pay, and upon receipt of such request Buyer shall pay, the remaining Holdback Amount, if any plus interest, if any, minus any amounts held in respect of pending, disputed or otherwise unpaid claims for damages of Buyer.

Rec. Doc. 27 § 6(d) at 6.

Contrary to C's argument, nothing in this language purports to require CVS, upon C's demand or otherwise, to furnish any portion of the Holdback Amount on March 30, 2013. Rather, March 30, 2013 was the first date upon which C's could demand from CVS the portion of the Holdback Amount not "held in respect of a pending, disputed or otherwise unpaid" indemnity claim. Where an amount is "held in respect of a pending, disputed or otherwise unpaid" claim, § 6(d) makes clear that CVS is entitled to wait for "a determination of liability on account of Seller's indemnification obligations" before acting on a demand for Holdback Amount. Any other reading would prevent CVS from deducting directly from the Holdback Amount when it prevails on a disputed indemnity claim, as is its right under § 6(d).

It is undisputed that CVS responded to C's first demand for the Holdback Amount, which was premature having been filed on January 10, 2013, with an assertion of its right to indemnification for breach of the Non-Compete Agreement. Rec. Doc. 9-3. Although the Court has since determined that the Non-Compete Agreement is void, this does not change the fact that CVS discharged its contractual obligations by advising CVS that it was retaining the Holdback Amount to satisfy an indemnity claim greater than its total.

Moreover, C's is incorrect in its assertion that "the only indemnity obligation that CVS ever articulated in this case which it claims that C's owes CVS are damages allegedly caused by C's unproven violations of the non-competition agreement." Rec. Doc. 39-1 at 10. Since the filing of its Answer, Affirmative Defenses and Counterclaim, CVS has also claimed the right to direct indemnification of the Non-Compete Amount on alternative failure of cause and unjust enrichment theories. Rec. Doc. 14, ¶¶ 23-27; Rec. Doc. 19 at 7-8. C's points to no reason why the Court should not consider this a valid "pending, disputed or otherwise unpaid claim[] for

11

damages."

Because CVS was entitled to wait until a court determined C's liability on account of these indemnity claims before furnishing the Holdback Amount, CVS cannot have breached the Purchase and Sale Agreement by failing to furnish the Holdback Amount before the Court reached such a determination in this matter. CVS is therefore entitled to summary judgment on C's breach of contract claim - C's third prayer for relief.

B. Reconsideration of Matters Resolved in the Previous Order

C's also asks the Court to reconsider granting CVS summary judgment on its entitlement to receive the Non-Compete Amount, based on the failure of cause in the Non-Compete Agreement. Rec. Doc. 39-1 at 10-20. However, the Court need not address C's arguments for reconsideration because the Court has identified a more obvious error in its September 30 Order and Reasons.

The Non-Compete Agreement states that the sum of $1,100,000 was paid <u>to the Ciolino family</u> in exchange for honoring its terms. Rec. Doc. 27, sched. C at 2. "[W]ith respect to [C's], the purchase of the assets under the Purchase and Sale Agreement by and between Buyer shall be deemed to be good and sufficient consideration for said covenant not to compete." *Id.* Thus, C's has not been "enriched without cause at the expense of" CVS to the extent of the Non-Compete Amount claimed in CVS's counterclaim. La. Civ. Code art. 2298.

CVS has filed no third-party complaint against the Ciolinos to receive the $1,100,000 paid to them. Nor have they provided a legal basis for recovering the amount paid to the Ciolinos for the Non-Compete Agreement from C's. "The personality of a juridical person is distinct from that of its members." La. Civ. Code art. 24.

The Court therefore awards summary judgment to C's on Counts I and II of CVS's counterclaim. In light of the fact that C's did not obtain the Non-Compete Amount in exchange for entering the Non-Compete Agreement, neither Count has any merit. The Court further declines to determine whether the Ciolino's are liable to repay the $1,100,000 Non-Compete Amount as that issue is not properly before the Court.

C. CVS's Unresolved Claims

With the filing of this Order and Reasons, the only claim or issue remaining in this case will be Count III of CVS's counterclaim, which claims for unspecified breach of the Purchase and Sale Agreement by C's and is unsupported by proper factual allegations. The Court sees little merit in this claim, or value in allowing it to proceed further. Nevertheless, the Court will not dismiss a claim *sua sponte* without proper notice and an opportunity to be heard. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). The Court will therefore order CVS to show cause why Count III of its complaint should not be dismissed with prejudice.

Accordingly,

IT IS ORDERED that C's Motion to Amend or Alter Judgment is hereby GRANTED IN PART and DENIED IN PART. Rec. Doc. 39.

IT IS FURTHER ORDERED that C's is hereby granted summary judgment on the first and second prayers for relief in its complaint. Rec. Doc. 1-2. C's is hereby denied summary judgment and CVS is hereby granted summary judgment on C's third prayer for relief in C's complaint. *Id.*

IT IS FURTHER ORDERED that C's is hereby granted summary judgment and CVS is

13

denied summary judgment on Counts I and II of CVS's counterclaim. Rec. Doc. 14.

IT IS FURTHER ORDERED that on or before February 7, 2014 at 5:00 P.M., CVS shall show cause why Count III of its counterclaim should not be dismissed without prejudice.

IT IS FURTHER ORDERED that the September 30, 2013 Order and Reasons is vacated to the extent that it conflicts with this Order and Reasons. Rec. Doc. 38.

New Orleans, Louisiana, this 9th day of January, 2014.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**